# EXHIBIT 3

# Guzzini Properties Limited

Company number: 284618
Registered address: Patton, Moreno & Asvat (BVI) Limited, 2nd Floor, O'Neal Marketing Associates Building,
P O Box 3174, Wickham's Cay II, Road Town, Tortola, BVI
Correspondence address: c/o Reuben Brothers SA, 9 Place du Molard, 1204 Geneva, Switzerland

Inigo Philbrick Ltd
55 Grosvenor Street
London W1K 3HY

28 August 2018

Dear Sirs

**Sale and purchase agreement – Stingel, Guyton, Wool (the "Agreement")**

1. **INTERPRETATION**

    We refer to the Agreement dated 28 June 2017. Terms defined in the Agreement shall, unless the context requires otherwise, have the same meaning when used in this letter.

2. **EXTENSION OF AGREEMENT**

    (a) Pursuant to Clause 7 (*Termination and Post-Termination*) of the Agreement, I can confirm that Guzzini Properties Ltd are prepared to extend the Termination date for 1 (one) year, being an expiry date of 28 August 2019, subject to all outstanding sums under the existing agreement ($599,000) being paid.

    (b) Upon signing of this Extension a further Option Fee of $10,000 will become immediately payable by the Seller.

    (c) References in the Agreement to 2017 are updated to be read as 2018 and references to 2018 are updated to be read as 2019.

    (d) All other terms of the Agreement are to remain in full force and effect.

3. **GENERAL**

    (a) This letter is a Finance Document.

    (b) This letter and any non-contractual obligations arising out of or in connection with it are governed by English law.

    (c) Please sign and return the enclosed copy of this letter to us within 7 (seven) Business Days to confirm your agreement with its terms.

Yours faithfully

For and on behalf of
**Guzzini Properties Limited**
(in its capacity as Buyer)

We hereby acknowledge and agree to the terms of this letter
**Inigo Philbrick Limited**
(in its capacity as Seller)

This **Agreement** is made the   day of June 2017

**BETWEEN**:

(1) **INIGO PHILBRICK LIMITED**, a company registered in England with company number 09053929 and registered address 55 Grosvenor Street, London W1K 3HY(the "**Seller**"); and

(2) **GUZZINI PROPERTIES LIMITED**, a company registered in the British Virgin Islands with registered address 197 Main Street, PO Box 3174, Road Town, Tortola, British Virgin Islands (the "**Buyer**").

Each a "**Party**" and together the "**Parties**".

**RECITALS**

(A) The Seller has agreed to sell the Artworks (as defined below) and the Buyer has agreed to purchase the Artworks upon the terms and conditions set out in this Agreement.

(B) The Buyer has agreed that the Seller has the option to buy back the Artworks and may exercise that option on and subject to the terms and conditions set out in this Agreement.

**It is agreed:**

1. **DEFINITIONS**

| | |
|---|---|
| **Artworks** | means the three artworks set out in Schedule 1 to this Agreement. |
| **Business Day** | means a day (other than a Saturday, Sunday or public holiday) when banks in London are open for business. |
| **Option Fee** | means a fee of US$10,000 payable by the Seller in relation to the Buyer granting the buy-back options as set out in clause 5. |
| **Purchase Price** | means the sum of US$6,000,000 (Six million US dollars), inclusive of any taxes and duties |
| **Seller's Bank Account** | means |
| | Bank Name: Santander |
| | Account Name: Inigo Philbrick Limited |
| | Account Number: 00053379 |
| | Sort code: 09-07-15 |
| | IBAN: ABBYGB2L |
| | Swift code: GB06 ABBY09071500053379 |

| | |
|---|---|
| **Tax or Taxation:** | whether or not directly or primarily chargeable against or attributable to the Artworks: |

(a) any form of tax, levy, impost, duty, contribution, customs and other import duties, liability and charge in the nature of taxation and all related withholdings or deductions of any kind wherever and whenever payable and shall further include any amount payable as a consequence of any claim, direction order or determination of any Taxation Authority; and

(b) all fines, penalties, charges, costs and interest included in or relating to any of the above or to any obligation in respect of any of the above.

| | |
|---|---|
| **Taxation Authority:** | any government, state or municipality or any local, state, federal or other fiscal, revenue, customs or excise authority, body or official competent to impose, administer, levy, assess or collect Tax. |
| **Tax Claim:** | in each case from which it appears that there is, or is likely to be, a liability or increased liability in respect of the Artworks in respect of which the Seller may be liable in respect of Tax: |

(a) any assessment, self-assessment, notice, letter, determination, demand or other document issued or action taken by or on behalf of any Taxation Authority (whether issued or taken before or after the date of this agreement and whether satisfied or not at the date of this agreement) including, for the avoidance of doubt, the imposition of any withholding of or on account of tax; and

(b) the preparation or submission to a Taxation Authority of any return, amended return, computation, accounts or any other documents by the Buyer, or another person.

| | |
|---|---|
| **Zurich Storage Facility** | means Moebel-Transport AG, Im Hackacker 4, 8902 Urdorf, Switzerland |

2. **AGREEMENT TO SELL AND PURCHASE**

On and subject to the terms and conditions of this Agreement and in consideration of the payment by the Buyer of the Purchase Price, the Seller hereby sells to the Buyer all legal and beneficial ownership in the Artworks and the Buyer hereby agrees to buy the Artworks.

3. **TERMS AND CONDITIONS OF SALE**

3.1 The Option Fee shall be payable by the Seller to the Buyer upon signature of this agreement by both Parties.

3.2 The Seller shall provide to the Buyer an invoice in the form of Schedule 2 within 5 Business Days of signature of this Agreement by both Parties.

3.3 The Buyer shall transfer the Purchase Price to the Seller's Bank Account within 5 Business Days of receipt of the Seller's invoice.

3.4 Legal and beneficial title in the Artworks shall transfer to the Buyer upon the Buyer's payment of the Purchase Price to the Seller.

3.5 The Artworks shall remain in the Zurich Storage Facility. Upon receipt of the Purchase Price, the Seller shall send to the Zurich Storage Facility a letter in the form appended at Schedule 3 transferring full control and possession of and access to the Artworks to the Buyer.

3.6 Subject to termination of this Agreement as set out in clause 7, the Seller shall continue to pay the costs of storage of the Artworks

3.7 While this Agreement remains in force, the Seller shall be responsible for the costs of insuring the Artworks with a reputable art insurer approved by the Buyer for not less than the value of each as set out in Schedule 1. The Buyer shall be named as loss payee on the Seller's insurance policy and the Seller shall provide copies of insurance certificates evidencing the same.

4. **WARRANTIES AND INDEMNITY**

4.1 The Seller represents and warrants the following:

   4.1.1 The Seller has full legal and beneficial title to the Artworks and is entitled without further action to transfer the legal and beneficial title in the Artworks to the Buyer on the terms of this Agreement without the consent of any third party.

   4.1.2 The Seller will transfer the Artworks with full title guarantee in the Artworks, free from all encumbrances to the Buyer and to complete the transactions contemplated in this Agreement including, without limitation, to transfer title in the Artworks in accordance with the provisions of this Agreement.

   4.1.3 The Artworks are and will remain free of all liens, charges, encumbrances or any other third party claims including but not limited to Tax Claims.

   4.1.4 All applicable laws, regulations and requirement relating to the Artworks' export and import have been complied with including any applicable VAT regulations. In the event that it subsequently emerges that any such laws and regulations have not been complied with the Seller will be responsible for any resulting financial loss, including but not limited to any penalties and interest that may accrue.

   4.1.5 The Artworks are the authentic and original Artworks created by the artists identified in Schedule 1 at or about the date indicated in Schedule 1 as the dates of creation and the Artworks are not replicas, reproductions or forgeries thereof and the Seller is not aware of any claim by any person to such effect.

   4.1.6 The Seller has provided the Buyer with all information in its knowledge which is true and accurate regarding the provenance, condition, attribution, description, alterations and restoration of the Artworks and the Seller is not aware of any challenges or disputes (past, pending or threatened) relating thereto.

4.1.7 The Seller has the full legal authority to enter into this Agreement, to make and give the representation and warranties herein and to agree to and enter into the other terms and provisions contained in this Agreement.

4.2 The Seller acknowledges that the Buyer will be relying on the representations and warranties it has given under the terms of this Agreement and the Seller will indemnify the Buyer against all claims, actions, losses, liabilities, and costs which may arise out of any action whatsoever connected to the Artworks arising out of, based upon or resulting from:

4.2.1 any act or omission by the Seller relating to or affecting the sale or purchase of the Artworks; and;

4.2.2 any breach or alleged breach by the Seller of any obligations, representations or warranties contained in this Agreement.

## 5. SELLER'S OPTION TO BUY BACK THE ARTWORKS

5.1 The Seller has the option to buy back the Artworks from the Buyer and may exercise that option on the terms set out in this clause 5.

5.2 The Buyer undertakes not to sell the Artworks until any option for the Seller to buy back the Artworks under this clause 5 has expired.

5.3 The Seller may confirm in writing to the Buyer between the period starting 27 June 2017 and ending 27 August 2018 that it wishes to buy the Artworks on the following terms:

5.3.1 If the Buyer receives the Seller's written confirmation that it wishes to exercise the option to buy back the Artworks no later than 27 June 2018, the Seller's purchase price will be US$6,590,000 (Six million five hundred ninety thousand US dollars) (the "Early Buy-back Price"); or

5.3.2 If the Buyer received the Seller's written confirmation that it wishes to exercises the option to buy back the Artworks after 27 June 2018 and no later than 27 August 2018, the Seller's purchase price will be US$6,740,000 (Six million seven hundred forty thousand US dollars) (the "Late Buy-back Price").

5.4 The Seller's option to buy back the Artworks expires after 27 August 2018.

5.5 Upon the Buyer's receipt of either the Early Buy-back Price or the Late Buy-back Price as may be applicable and the Option Fee, legal and beneficial title in the Artworks shall transfer to the Seller, subject to such monies being received by the Buyer prior to 27 August 2018.

5.6 Subject to clause 5.6, the Buyer shall send to the Zurich Storage Facility a letter in the form appended at Schedule 4 transferring full control and possession of and access to the Artworks to the Seller.

## 6. CONFIDENTIALITY

The Seller and the Buyer acknowledge that the provisions and subject matter of this Agreement, including but not limited to the identity of the Seller, the identity of the Buyer, details of the Artworks and the Purchase Price, are confidential and the Parties agree not to disclose any of the foregoing information to any person or party, except as may be required by law or regulation, whether concurrent with or subsequent to the execution and delivery

of this Agreement. Notwithstanding the foregoing, the Parties may disclose the terms of this Agreement to their respective legal advisers, financial and other advisers, and accountants to the extent necessary to fulfil their legal or financial obligations.

7. **TERMINATION AND POST-TERMINATION**

7.1 Subject to clause 7, this Agreement will terminate no later than 28 August 2018 or on the Seller's exercising its option to buy back the Artworks, whichever is the earlier.

7.2 The warranties and indemnity included in this Agreement and the Parties' obligations in relation to confidentiality survive termination.

7.3 If the Seller has not exercised the option to buy back the Artworks in accordance with clause 5 above, the Seller's obligations to pay for storage, insurance and any other expenses relating to the Artworks shall cease on 28 August 2018.

8. **MISCELLANEOUS**

8.1 This Agreement represents the entire understanding of all the Parties hereto with regard to its subject matter and supersedes any and all other and prior agreements between the Parties in relation to such matters. Nothing in this Agreement shall, however, operate to limit or exclude any liability for fraud or fraudulent misrepresentation.

8.2 The terms of this Agreement may not be modified or amended, except in a writing signed by the Parties.

8.3 This Agreement shall inure to the benefit of, and shall be binding upon, the successors, heirs, executors and administrators of the Parties hereto. The Parties may not assign, transfer, charge or deal with this Agreement or all or any part of the benefit of, or the rights and benefits under this Agreement, except with the prior written consent of the other Party.

8.4 If any provision of this Agreement is so found to be invalid or unenforceable but would be valid or enforceable if some part of the provision were deleted, the provision in question shall apply with such modification(s) as may be necessary to make it valid and enforceable in the relevant jurisdiction but shall continue to apply without any modification in all other relevant jurisdictions.

8.5 Any notice required to be given pursuant to this Agreement shall be in writing.

8.6 The Parties agree that the terms of this Agreement are not enforceable by any third party under the Contracts (Rights of Third Parties) Act 1999.

8.7 This Agreement and any dispute or claim arising out of or in connection with it or its subject matter (including non-contractual disputes or claims) shall be governed by and construed in accordance with English law.

8.8 The Parties irrevocably agree to submit to the exclusive jurisdiction of the courts of England over any claim or matter arising under or in connection with this Agreement (including non-contractual disputes or claims).

8.9 This Agreement may be executed in counterparts all of which taken together shall constitute a single instrument.

**SIGNED** on behalf of **INIGO PHILBRICK LIMITED**

| Signature | |
|---|---|
| Director | |
| Print name | |

**SIGNED** on behalf of **GUZZINI PROPERTIES LIMITED**

| Signature | |
|---|---|
| Director | |
| Print name | |

# Schedule 1

# Artworks



Title: *Untitled*

Artist: Rudolf Stingel

Date: 2012

Medium: Oil on canvas

Dimensions: 241.3 x 193 cms

Signed by the artist

Insured value: US$10,000,000

Provenance:   Gagosian Gallery, New York

　　　　　　　Private Collection, Russia

　　　　　　　Inigo Philbrick Limited

Exhibited:    PicassoMania, Le Grand Palais, Paris, 7 October 2015 - 29 February 2016



Title: *Untitled*

Artist: Wade Guyton

Date: 2006

Medium: Epson UltraChrome inkjet on linen

Dimensions: 226.1 x 137.2 cms

Insured value: US$6,000,000

Provenance:   Petzel Gallery, New York; Private Collection, Belgium

   Inigo Philbrick Limited

Exhibited:   23 February – 25 March 2006, *Color, Power & Style*, Petzel Gallery, New York;

   4 October 2012 – 13 January 2013, Whitney Museum of American Art, New York



Title: *Untitled (P604)*

Artist: Christopher Wool

Date: 2009

Medium: Enamel on linen

Dimensions: 304.8 x 243.84 cms

Insured value: US$9,000,000

Provenance:   Max Hetzler Gallery

　　　　　　　Private Collection, Switzerland

　　　　　　　Private Collection, London

　　　　　　　Inigo Philbrick Limited

## Schedule 2

## Pro Forma Invoice

[Inigo Philbrick Limited letterhead]

[x] June 2017

Invoice No. [x]

Guzzini Properties Limited

197 Main Street, PO Box 3174, Road Town, Tortola, British Virgin Islands

## PRO FORMA INVOICE

### Rudolf Stingel

*Untitled,* 2012 (Picasso portrait)

Oil on canvas

241.3 x 193 cms

### Wade Guyton

*Untitled*, 2006

Epson UltraChrome inkjet on linen

226.1 x 137.2 cms

### Christopher Wool

*Untitled (P604)*, 2009

Enamel on linen

304.8 x 243.84 cms

**TOTAL:**  **US$6,000,000.00**

To be paid in full no later than [date].

Title passes on payment in full being made. This invoice is governed by English law.

## Schedule 3

### Letter to Zurich Storage Facility

[Inigo Philbrick Limited letterhead]

[Date]

The Directors
Möbel Transport AG
Gaswerkareal
Zurich CH 8010
Switzerland

Dear Sirs

RE: *Untitled*, 2012 (Picasso portrait) by Rudolf Stingel; *Untitled*, 2006 by Wade Guyton; and *Untitled (P604)*, 2009 by Christopher Wool (the "**Artworks**")

We write on behalf of Guzzini Properties Limited in relation to the above named Artworks, identified by tracking numbers 53195, 13107 and [x] respectively and located at Im Hackacker 4, 8902 Urdorf, stored by us at your premises on 31 January 2017, 29 April 2014 and [x] respectively.

You are instructed to hold the Artworks for the benefit of Guzzini Properties Limited to which legal and beneficial title in the Paintings has been transferred. The Paintings will remain in our storage facility at our expense but may only be moved or removed from storage with the sole express written approval of Guzzini Properties Limited.

Please sign and return a copy of this letter to acknowledge the above instructions.

For your information, the contact information for Guzzini Properties Limited is as follows:

Mr Alexander Bushaev
197 Main Street, PO Box 3174, Road Town, Tortola, British Virgin Islands
E-mail: abushaev@reubros.com

Yours faithfully,


Inigo Philbrick

For and on behalf of Inigo Philbrick Limited

---

Read, agreed and accepted by


--------------------------------------------------

[name], Director                                            Date

For and on behalf of Möbel Transport AG.

## Schedule 4

## Letter to Zurich Storage Facility

[Guzzini Properties Limited letterhead]

[Date]

The Directors
Möbel Transport AG
Gaswerkareal
Zurich CH 8010
Switzerland

Dear Sirs

RE: *Untitled*, 2012 (Picasso portrait) by Rudolf Stingel; *Untitled*, 2006 by Wade Guyton; and *Untitled (P604)*, 2009 by Christopher Wool (the "**Artworks**")

We write on behalf of Inigo Philbrick Limited in relation to the above named Artworks, identified by tracking numbers 53195, 13107 and [x] respectively and located at Im Hackacker 4, 8902 Urdorf, stored by Inigo Philbrick Limited at your premises on 31 January 2017, 29 April 2014 and [x] respectively.

You are instructed to hold the Artworks for the benefit of Inigo Philbrick Limited to which legal and beneficial title in the Paintings has been transferred. The Paintings may only be moved or removed from storage with the sole express written approval of Inigo Philbrick Limited.

Please sign and return a copy of this letter to acknowledge the above instructions.

Yours faithfully,


Alexander Bushaev

For and on behalf of Guzzini Properties Limited

---

Read, agreed and accepted by


-------------------------------------------------
[name], Director                                          Date

For and on behalf of Möbel Transport AG.