UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| V&A Collection, LLC,<br><br>   *Plaintiff*,<br><br> -against-<br><br>Guzzini Properties Ltd.,<br><br>   *Defendant*. | Case No. 20-cv-01797 (KPF)<br><br>Hon. Katherine Polk Failla |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

       **GROSSMAN LLP**
       Judd B. Grossman, Esq.
       Lindsay E. Hogan, Esq.
       Sarah E. Schuster, Esq.
       745 Fifth Avenue, 5th Floor
       New York, New York  10151
       Telephone:  (646) 770-7445
       Facsimile:  (646) 417-7997

       *Attorneys for Plaintiff V&A Collection, LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 4

LEGAL ARGUMENT .................................................................................................................. 6

    I.     Guzzini Has Consented to this Court's Jurisdiction. ............................................... 6

    II.    V&A Has Sufficiently Stated its Conversion Claim................................................ 8

    III.   New York Is a Convenient Forum for All Parties and the Main Witness;
           New York Has the Most Significant Interest in Resolving this Dispute. ................ 9

    IV.   This Court Has Subject-Matter Jurisdiction;
           Guzzini's "Equity Jurisdiction" Claim is Meritless............................................. 12

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

*Abbacor, Inc. v. Miller*,
  No. 01 CIV. 0803 (JSM), 2001 WL 1006051 (S.D.N.Y. Aug. 31, 2001) .................................7

*Accent Delight Int'l Ltd. v. Sotheby's*,
  394 F. Supp. 3d 399 (S.D.N.Y. 2019) ...............................................................................11

*Adams v. Hickey*,
  35 A.D.3d 328, 828 N.Y.S.2d 105 (2d Dep't 2006).............................................................9

*Angiolillo v. Christie's, Inc.*,
  64 Misc. 3d 500, 103 N.Y.S.3d 244 (Sup. Ct. N.Y. Co. 2019) .................................................8

*Bakalar v. Vavra*,
  619 F.3d 136 (2d Cir. 2010)................................................................................................12

*Elmaliach v. Bank of China Ltd.*,
  110 A.D.3d 192, 971 N.Y.S.2d 504 (1st Dep't 2013) ..............................................................11

*Glob. Tech Indus. Grp., Inc. v. Go Fun Grp. Holdings, Ltd.*,
  No. 17 CIV. 3727 (AJP), 2017 WL 5036665 (S.D.N.Y. Nov. 2, 2017)..................................10

*Gowen v. Helly Nahmad Gallery, Inc.*,
  60 Misc. 3d 963, 77 N.Y.S.3d 605 (Sup. Ct. N.Y. Co. 2018) .................................................13

*Guiffrida v. Storico Dev., LLC*,
  60 A.D.3d 1286, 876 N.Y.S.2d 793 (4th Dep't 2009).............................................................8

*Hanson v. Denckla*,
  357 U.S. 235 (1958)................................................................................................13

*House of Diamonds v. Borgioni, LLC*,
  737 F. Supp. 2d 162 (S.D.N.Y. 2010) ................................................................................7

*Ilusorio v. Ilusorio-Bildner*,
  103 F. Supp. 2d 672 (S.D.N.Y. 2000) ..................................................................................11

*Lynch v. Plesch*,
  8 Misc. 2d 612, 167 N.Y.S.2d 885 (Sup. Ct. N.Y. Co.) ..................................................... 13-14

*Neuralstem, Inc. v. StemCells, Inc.*,
  573 F. Supp. 2d 888 (D. Md. 2008) ............................................................................. 6, 7-8

*O'Brien v. Ginter*,
  296 A.D.2d 387, 744 N.Y.S.2d 511 (2002) ...................................................................8

*Phillips v. Reed Grp., Ltd.*,
  955 F. Supp. 2d 201 (S.D.N.Y. 2013) ..........................................................................9

*Reynolds v. Xerox Educ. Servs., LLC*,
  2013 WL 5303797 (S.D.N.Y. Sept. 20, 2013)...........................................................10

*Rusakiewicz v. Lowe*,
   556 F.3d 1095 (10th Cir. 2009)................................................................................ 6-7

*Silver v. Alon Zakaim Fine Art Ltd.*,
  180 A.D.3d 467, 115 N.Y.S.3d 669 (1st Dep't Feb. 11, 2020) .................................10

*Simon v. Weaver*,
  327 F. Supp. 2d 258 (S.D.N.Y. 2004) .........................................................................8

*Solomon R. Guggenheim Found. v. Lubell*,
  77 N.Y.2d 311, 569 N.E.2d 426 (1991).....................................................................12

*SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*,
  942 F. Supp. 2d 1148 (D. Colo. 2013).........................................................................7

*Sperrazza v. Kail*,
  267 A.D.2d 692, 699 N.Y.S.2d 609 (3d Dep't 1999) ..................................................9


**STATUTES**                                                                                           **PAGE**

28 U.S.C. § 1332..................................................................................................................12

**PRELIMINARY STATEMENT**

This case arises out of a property-title dispute concerning a valuable artwork by post-conceptual American artist Wade Guyton (the "Guyton" or the "Work"). Plaintiff V&A Collection, LLC ("V&A") purchased a 50% ownership interest in the Guyton in 2013 from Modern Collections, a secondary-market art dealer; under the terms of that deal, V&A and Modern Collections would jointly own the Work. And since that time, V&A never authorized the sale or disposition of the Work. In October 2019, however, V&A learned that Defendant Guzzini Properties Ltd. ("Guzzini"), an entity owned by the Reuben brothers, had possession of the Work and it was claiming to be the sole owner. V&A immediately notified Guzzini of its ownership claim, but Guzzini has steadfastly refused to recognize V&A's ownership rights.

Guzzini, for its part, claims to have purchased the Work, together with two other pieces, under a single June 28, 2017, agreement, titled the "Finance Document." As it turns out, at least one of those other works also is subject to competing title claims. And to resolve that dispute, in early November 2019, Guzzini voluntarily commenced proceedings *in rem* in New York State Supreme Court seeking to quiet title to that other work. *See Guzzini Props. Ltd. v. "Untitled by Rudolf Stingel, 2012," in Rem*, Index No. 656467/2019 (the "New York State Court Action"). Where Guzzini initiated proceedings in New York to adjudicate its ownership rights to artworks under the Finance Document, V&A naturally sought to intervene in that suit to resolve the related competing claims regarding the Guyton, and to obtain an injunction enjoining the disposition of the Work during the pendency of this suit. Guzzini objected.

Guzzini first claimed that V&A's motion for injunctive relief was "moot," because, as it revealed to the Court at the order-to-show-cause hearing, Guzzini purportedly had transferred the Work to a third party—not coincidentally, contemporaneously with the commencement of the New York State Court Action—and that it no longer had possession, custody, or control: "In G-d we

1

Trust." "[The Guyton] is out of [Guzzini's] possession and control." (Dkt. No. 10-5 at 16:13-17.) Based on those express representations, finding that Guzzini's counsel "wouldn't mislead either me or you," the State Court denied the application, and directed V&A to file a standalone action, which the court would be "willing to consider [] a related action and defer for now on whether they're consolidated for discovery or more broadly." (*Id.* at 17:6-13). At the same time, because Guzzini refused to voluntarily divulge the whereabouts of the Work, or the circumstances surrounding the questionable title transfer, the Court scheduled a hearing on V&A's motion for expedited discovery.

As Guzzini has since admitted to this Court, however, its representations to Justice Joel M. Cohen about the current disposition of the Guyton were misleading, at best. Indeed, over its objections, Guzzini eventually disclosed to this Court that the Guyton is, in fact, "with an affiliate" of Guzzini, "a company where the director of [Guzzini] is one of the directors at the company that it was transferred to." (Dkt. No. 14 at 8:2-4; 8:18-20.) And in the wake of those misleading statements, rather than return to Justice Cohen to challenge V&A's request for expedited discovery concerning the questionable circumstances of the purported transfer, Guzzini removed the action to this Court—without notice to the State Court or its staff—on the Friday evening before a scheduled Monday morning hearing. (*See* Dkt. No. 10 at ¶¶ 11-12.) On March 10, 2020, Guzzini wrote to this Court confirming that it had "transferred" the Guyton—notably, "transferred," not sold—to an affiliate, and that the shared "director" of these affiliated entities had provided a "representation that Lanark will not move, sell, transfer or otherwise dispose of the Artwork while this action is pending." (Dkt. No. 11.)

Despite voluntarily invoking a New York Court's jurisdiction to adjudicate its alleged ownership rights to three artworks—including the Guyton—under the Finance Document, Guzzini now claims that this Court lacks personal jurisdiction. Guzzini's jurisdictional objections are

2

wrong as a matter of fact and law, where it consented to the jurisdiction of New York courts to determine its rights under the Finance Document by voluntarily commencing the New York State Court Action. Because Guzzini's first-filed New York State Court Action and this case arise from a single agreement, and a substantially similar nucleus of operative facts, Guzzini has consented to this Court's personal jurisdiction. Guzzini entirely misapprehends V&A's jurisdictional arguments by engaging in a lengthy analysis of New York's long-arm jurisdiction. The basis for jurisdiction is Guzzini's consent and waiver, and both in its pre-motion opposition letter, and now in its memorandum of law, Guzzini has absolutely no answer.

Guzzini's *forum non conveniens* argument is baseless where it chose to litigate its claims under the Finance Document in New York, so there is no legitimate basis to argue its own inconvenience. And Guzzini cannot rely on the alleged inconvenience to others, where V&A is based here, and the only non-party witness Guzzini identifies—indeed, the single most critical witness who masterminded the scheme underlying these title disputes—is now in New York (in the custody of federal authorities). New York is not an inconvenient forum; it is the *most* convenient forum to resolve these claims.

Guzzini's attack on the substance of the pleadings fares no better, where V&A unquestionably has pleaded the elements of a conversion claim—namely, V&A has pleaded the factual basis for its ownership claims, and there is no dispute that Guzzini has refused to recognize V&A's rights despite V&A's repeated demands. Especially where Guzzini admittedly transferred the Work in secret to an affiliate at a time when it already knew of V&A's ownership claim—constituting a separate, independent act of conversion—Guzzini's challenge to the sufficiency of the pleadings falls flat.

Guzzini is grasping at straws in arguing that this Court lacks "equity jurisdiction," an apparent attack on this Court's subject-matter jurisdiction. But there is no good-faith basis in law

or fact to question the Court's jurisdiction to adjudicate V&A's legal claim seeking money damages. And where the parties are subject to this Court's jurisdiction, it is irrelevant that Guzzini allegedly transferred the Work to an affiliate and secreted the Work to a location in Switzerland in an effort to avoid being hauled into Court here.

This Court has personal and subject-matter jurisdiction, and V&A has adequately pleaded its tort claim. The motion should be denied in its entirety.

## FACTUAL BACKGROUND

**V&A Purchases a 50% Ownership Interest in the Work;
Inigo Philbrick Purports to Transfer an Interest in the Work to Guzzini;
<u>Guzzini Refuses to Return the Work to V&A Despite its Demands.</u>**

In June 2013, V&A jointly purchased a 50% ownership interest in the Guyton from Modern Collections, a secondary-market art dealer. (*See* Grossman Decl. Ex. 1 at ¶¶ 2-5.) An art dealer named Inigo Philbrick, on behalf of Modern Collections, memorialized the terms of this transaction at the time in a June 29, 2013, email from his "moderncollections.net" address. (Grossman Decl. Ex. 2.) In that email, Philbrick made it clear that V&A was purchasing a 50% ownership interest in the Guyton together with Modern Collections: "So that we have it in writing - we are buying together a large format (90 x 53 in) 2006 Flaming U. We are 50/50 owners of the work, but upon sale you will return 850k and I will return 700k, and then we split the profit." (*Id.*)

In 2017, without V&A's knowledge or consent, and without any compensation to V&A, Philbrick—ostensibly on behalf of IPL, another of his entities—purported to transfer an interest in the Work to Guzzini. This purported transaction is memorialized in a June 28, 2017, agreement (the "Finance Document"). (*See* Grossman Decl. Ex. 1 at ¶¶ 4-5; Ex. 3.) Although Guzzini claims to have *purchased* the Work from IPL for $6 million under the Finance Document (*see* Grossman Decl. Ex. 1 at ¶ 20), in reality, as the face of the contract itself makes clear, Guzzini was actually

4

*loaning* $6 million to IPL, and in return IPL purported to pledge the three artworks (the Work and two other artworks) as collateral (*see* Grossman Decl. Ex. 1 at 1).

The Finance Document memorializing Guzzini's loan states that the three works had a total insured value of $25 million—more than four times the purported $6 million "purchase price." (*See* Grossman Decl. Ex. 3 at ¶ 1.)  That $6 million figure is consistent with a typical loan-to-value ratio for art-backed loans.  And the contract on its face states that it is a "finance document," a term used in English law (the governing law of the agreement) (*see* Grossman Decl. Ex. 3 at ¶ 8.7), to refer to security and loan transactions, not purchase-and-sale agreements.  Notwithstanding that the deal actually was a loan, not a purchase, Guzzini took possession of the three artworks, including the Work, and claimed to own them free and clear.  (*See* Grossman Decl. Ex. 3 at ¶ 8.)

**Guzzini Reveals that it Transferred the Work to an Affiliate;**
**<u>Guzzini Removes this Case After Plaintiff Seeks Expedited Discovery.</u>**

Guzzini first initiated proceedings in the related New York State Court Action to enforce its rights under the Finance Document, claiming that it had purchased the Guyton and two other artworks in that single transaction. *See Guzzini Props. Ltd. v. "Untitled by Rudolf Stingel, 2012," in Rem*, Index No. 656467/2019.  In the interests of efficiency, V&A sought to intervene in Guzzini's New York State Court Action, and it submitted a proposed complaint-in-intervention.

At the same time, V&A sought an injunction against Guzzini seeking to enjoin the transfer or disposition of the Guyton during the pendency of this dispute.  Guzzini opposed the motion in its entirety, and in doing so, it represented to Justice Joel M. Cohen that it transferred ownership of the artwork at almost the same time it commenced the New York State Court Action, and that it no longer had possession, custody, or control:  "In G-d we Trust."  "[The Guyton] is out of [Guzzini's] possession and control." (Dkt. No. 10-5 at 16:13-17.)  Finding that Guzzini's counsel "wouldn't mislead either me or you," the State Court denied the application, and directed V&A to

5

file a standalone action, which the court would be "willing to consider [] a related action and defer for now on whether they're consolidated for discovery or more broadly." (*Id.* at 17:6-13).

As Guzzini has since revealed, though, its representations to Justice Cohen were untrue. Indeed, over its objections, Guzzini eventually disclosed to this Court that the Guyton is, in fact, "with an affiliate" of Guzzini, "a company where the director of [Guzzini] is one of the directors at the company that it was transferred to." (Dkt. No. 14 at 8:2-4; 8:18-20.) Guzzini then removed the action to this Court on the Friday evening before a scheduled Monday morning hearing. (*See* Dkt. No. 10 at ¶¶ 11-12.) On March 10, 2020, Guzzini wrote to this Court confirming that it had "transferred" the Guyton—notably, "transferred," not sold—to an affiliate, and that the shared "director" of these affiliated entities had provided a "representation that Lanark will not move, sell, transfer or otherwise dispose of the Artwork while this action is pending." (Dkt. No. 11.) This Court then granted Plaintiff's request for limited expedited discovery concerning the disposition of the Work, and Guzzini did not provide a single document in response. This dismissal motion followed.

## LEGAL ARGUMENT

**I.  Guzzini Has Consented to this Court's Jurisdiction.**

Where Guzzini chose New York as the forum to litigate its rights to artworks under the Finance Document, there can be no question that Guzzini has consented to this Court's jurisdiction for the purposes of these claims arising out of Guzzini's alleged rights under the very same transaction and agreement. *See Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 897 (D. Md. 2008) (holding that defendant "consents to jurisdiction through the act of filing a previous suit where the second suit arises from the 'same transaction' or the 'same nucleus of operative facts'"); *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009) (finding that "the act of filing a lawsuit in a particular state is sufficient to establish jurisdiction over the plaintiff in the courts of

6

that state in a subsequent action" arising from the same transaction); *SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1156 (D. Colo. 2013), *aff'd*, 553 F. App'x 1008 (Fed. Cir. 2014) (finding personal jurisdiction "based upon implied consent or waiver" over non-resident defendants who previously filed a claim in the forum state that "involves the same transaction"); *see also Abbacor, Inc. v. Miller*, No. 01 CIV. 0803 (JSM), 2001 WL 1006051, at *3 (S.D.N.Y. Aug. 31, 2001) (finding consent jurisdiction where defendant initiated prior arbitration proceedings in a jurisdiction to adjudicate rights under the same contract at issue in the lawsuit).

In *Neuralstem*, for example, the court recognized the well-settled principal "that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction[.]" Indeed, even though in that case different patents were involved in the two lawsuits, the court found consent to jurisdiction where each lawsuit "a[rose] out of the same transaction or same nucleus of operative facts[.]" *Neuralstem, Inc.*, 573 F. Supp. 2d at 897-98. As in *Neuralstem*, here Guzzini has consented to this Court's jurisdiction to adjudicate claims relating to the Finance Document because the New York State Action that Guzzini commenced and this lawsuit arise from the same transaction and nucleus of operative facts.[1] Both cases directly relate to, and require adjudication of Guzzini's alleged ownership rights regarding "three works," including the Guyton, under the Finance Document. (Guzzini Amended Compl. ¶¶ 4-5.) It is therefore insignificant that the New York State Court Action involves a

---

[1] Facts also have emerged since the inception of the New York State Court Action establishing that Guzzini purported to transfer ownership of the Work to an affiliate in November 2019, *after* V&A first notified Guzzini of its claims and demanded the return of the Work. So there can be no question that at the time of that purported transfer, Guzzini at the very least should have expected that act to have consequences in New York. *See House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 167 (S.D.N.Y. 2010) (where defendant was aware that party asserting a claim to the property was "a New York corporation with a principal place of business in New York," defendant "should reasonably have expected that failure to pay for or return the [property] in question would have consequences in New York").

7

different work than this case, where both cases arise out of a single agreement and transaction. Where both actions involve the issue of Guzzini's alleged ownership rights under the same agreement, Guzzini has already consented to jurisdiction in New York by initiating the related New York State Court Action.  *See Neuralstem, Inc.*, 573 F. Supp. 2d at 897.  Guzzini literally offers no meaningful response to this consent argument.  For this reason, the motion to dismiss must be denied.

## II.     V&A Has Sufficiently Stated its Conversion Claim.

The two key elements of a conversion claim are (1) "a plaintiff's possessory right or interest in the property," and (2) "a defendant's dominion over the property or interference with it, in derogation of a plaintiff's rights."  *Angiolillo v. Christie's, Inc.*, 64 Misc. 3d 500, 520, 103 N.Y.S.3d 244, 260–61 (Sup. Ct. N.Y. Co. 2019).  In fact, stated another way, this Court has described the first element of conversion as "title to the property converted, *or* [a] right to possession of that property."  *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (emphasis added).  Because V&A has pleaded facts establishing each of these elements, Guzzini's motion to dismiss the conversion claim must be denied.

Guzzini is wrong as a matter of law in arguing that V&A had "only an alleged 50% interest in the artwork" and "never had a right to take possession of it." (Br. at 12.)  *See Guiffrida v. Storico Dev., LLC*, 60 A.D.3d 1286, 1287, 876 N.Y.S.2d 793, 795 (4th Dep't 2009) (finding the allegation that plaintiff did not own the property "irrelevant to the award of damages for conversion because plaintiff had an immediate superior right of possession to the property") (internal citations omitted).  As a joint owner, of course V&A had such a right.  It is well-settled that "[i]n a tenancy-in-common, each cotenant has an equal right to possess and enjoy all or any portion of the property as if the sole owner."  *O'Brien v. Ginter*, 296 A.D.2d 387, 387, 744 N.Y.S.2d 511, 512 (2002).  But

Guzzini ignores V&A's claims that it "purchased a 50% *ownership* interest" (*see* Grossman Decl. Ex. 1 at ¶ 15 (emphasis added)).

V&A sufficiently pleaded that it was a tenant-in-common owner of the Work and therefore had an equal right to possess the Work as the other tenant-in-common. And under New York law, one tenant-in-common has the requisite right to possession to maintain a conversion action against a third party who has wrongly taken possession of the entire property, even where the tenant-in-common has only a 50% ownership interest. *See Adams v. Hickey*, 35 A.D.3d 328, 329, 828 N.Y.S.2d 105, 106 (2d Dep't 2006) (holding a cotenant of a bank account with a one-half ownership interest in the funds could maintain a conversion action against non-cotenant defendant that withdrew and deposited the entirety of the bank account into defendant's trust account); *Sperrazza v. Kail*, 267 A.D.2d 692, 693, 699 N.Y.S.2d 609, 610 (3d Dep't 1999) (finding *prima facie* showing of conversion claim where one co-tenant withdrew entire bank account without other co-tenant's consent).

### III. New York Is a Convenient Forum for All Parties and the Main Witness; New York Has the Most Significant Interest in Resolving this Dispute.

Where Guzzini transacts business in New York, is owned by two of the world's wealthiest men, has retained counsel in New York, and has voluntarily commenced litigation in New York adjudicating its rights under the very same Finance Document at issue here, Guzzini cannot seriously claim that New York is an inconvenient forum to resolve this dispute filed by a New York Plaintiff. *See Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 236 (S.D.N.Y. 2013) (rejecting *forum non conveniens* argument and denying transfer where defendant conducted business in New York, had retained New York City-based counsel, and had sufficient resources to litigate in plaintiff's chosen forum).

Although Guzzini did not produce a single page of documents in response to this Court's expedited-discovery Order, various facts have already emerged from the New York State Court Action establishing that Guzzini has meaningful New York contacts and that New York is not inconvenient for it to transact business, or litigate its claims under the Finance Document. Indeed, Guzzini does not dispute that in 2019, it offered for sale at Christie's New York one of the other two artworks it claims to have obtained along with the Guyton under the Finance Document. (*See* Dkt. No. 10-2 at ¶ 9.) In other words, Guzzini intentionally availed itself of the New York art market in dealing with at least one of the three works it purportedly acquired through the Finance Document.[2]

Guzzini claims that New York would be inconvenient for "witnesses," but it does not say who those people are. But "[t]he moving party must submit 'a specific list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover.'" *Glob. Tech Indus. Grp., Inc. v. Go Fun Grp. Holdings, Ltd.*, No. 17 CIV. 3727 (AJP), 2017 WL 5036665, at *9 (S.D.N.Y. Nov. 2, 2017) (quoting *Reynolds v. Xerox Educ. Servs., LLC*, 2013 WL 5303797 at *2 (S.D.N.Y. Sept. 20, 2013)). And where, as here, Guzzini has absolutely failed to do so, there is no factual basis to accept its bare claims of inconvenience.

The witnesses who are known do not support Guzzini's *forum non conveniens* arguments. Not only are V&A and its owners here, but Inigo Philbrick, *the* key player in the underlying events, is in New York, where he is incarcerated in federal custody while he awaits his criminal trial *in this Courthouse*.

---

[2] As New York's First Department unanimously affirmed earlier this year, a consignment of a contested artwork to Christie's in New York is sufficient to show a party transacted business in New York for jurisdictional purposes. *See Silver v. Alon Zakaim Fine Art Ltd.*, 180 A.D.3d 467, 468, 115 N.Y.S.3d 669, 669 (1st Dep't 2020) (London gallerists transacted business in New York by consigning the contested painting for sale at Christie's New York).

Guzzini misplaces reliance on the English choice-of-law provision in the Finance Document as a reason that this case should be litigated in London, not here. *See Ilusorio v. Ilusorio-Bildner*, 103 F. Supp. 2d 672, 679 (S.D.N.Y. 2000) ("[T]he application of foreign law does not, in itself, justify dismissal."). Guzzini is litigating the import of that document as we speak, across the street in the related New York State Court Action. It is unclear what is "the high burden of applying foreign law" to this agreement, but in any case, by seeking to enforce that agreement in a New York court, Guzzini has effectively conceded that this burden has been met. *See Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 409 (S.D.N.Y. 2019) (plaintiff's choice of forum is entitled to deference where it is motivated "by genuine convenience," including "the defendant's amenability to suit in the forum district").

Guzzini confuses the issue by citing the English choice-of-law provision in V&A's invoice for an entirely different artwork than the Work at issue here. V&A purchased a painting, entitled "X," in a straight forward sale, memorialized by a one-page invoice, which it later traded with Modern Collections in exchange for co-ownership of the Work at issue. Not only are the terms of the "X" invoice largely irrelevant, but they are entirely straightforward, and do not involve any complex issue of law (foreign or domestic). The claim at issue in this case depends primarily of the meaning of Guzzini's Finance Document, and once again, Guzzini already has demonstrated the total lack of inconvenience in litigating those issues in New York. Where a defendant is already litigating a related action in New York, it will fail to meet its burden of showing that New York is an inconvenient forum. *See Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192, 209, 971 N.Y.S.2d 504, 519 (1st Dep't 2013) (affirming that defendant failed to meet its burden to show New York was an inconvenient forum, given that it is currently litigating and engaged in discovery in a related New York federal court case).

Finally, New York has the most significant relationship to the dispute. Philbrick perpetrated his crimes here. And courts have recognized that, given New York's central role in the global art market, New York has a strong interest in applying its own laws to deter trade in stolen art. *See Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317, 569 N.E.2d 426, 431 (1991) (noting New York's "worldwide reputation as a preeminent cultural center," and its recognized need for case law that does not "encourage illicit trafficking in stolen art"). The Second Circuit has recognized New York's "compelling interest in the application of its law" to art-title disputes in light of New York's need to "preserve the integrity of transactions and prevent the state from becoming a marketplace for stolen goods." *Bakalar v. Vavra*, 619 F.3d 136, 144 (2d Cir. 2010) (concluding New York had "the greatest interest in" a dispute over artwork where applying New York law "may cause New York purchasers of artwork to take greater care in assuring themselves of the legitimate provenance of their purchase").

### IV.  This Court Has Subject-Matter Jurisdiction; Guzzini's "Equity Jurisdiction" Claim is Meritless.

There can be no serious question that this Court has subject-matter jurisdiction to adjudicate a New York plaintiff's conversion claim seeking damages against a foreign defendant. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of *all civil actions* where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [ . . . ] citizens of a State and citizens or subjects of a foreign state.") (emphasis added). In arguing that this Court cannot "adjudicate an enforceable remedy" in this case because "the artwork itself is not subject to this [C]ourt's jurisdiction," Guzzini appears to be challenging this Court's subject-matter jurisdiction. (Br. at 12-13.) There is no good-faith basis in law or fact for such a claim.

There is no requirement that the stolen Work be physically located in New York for this Court to exercise jurisdiction over V&A's conversion claim.[3] Guzzini misreads the Supreme Court's decision in *Hanson v. Denckla*, 357 U.S. 235 (1958), to claim that "the artwork itself is a necessary party to this action" and that the Court cannot adjudicate the interests in the Work "without the [Work] actually being present here in New York." (Br. at 13.) *Hanson* says no such thing. In that case, the Court ruled that a Florida court did not have jurisdiction to adjudicate the validity of an inter vivos trust where it had *neither* in personam jurisdiction over necessary defendants *nor* in rem jurisdiction over the trust assets. Nowhere did the Court hold that the property at issue is an indispensable party. And for that reason, New York courts have upheld subject-matter jurisdiction in title-disputes like this one, even though the property happens to be located elsewhere. *See, e.g.*, *Gowen v. Helly Nahmad Gallery, Inc.*, 60 Misc. 3d 963, 980, 77 N.Y.S.3d 605, 619 (Sup. Ct. N.Y. Co. 2018), *aff'd,* 169 A.D.3d 580, 95 N.Y.S.3d 62 (1st Dep't 2019) ("Given that this Court has found personal jurisdiction over the Defendants is proper, the physical absence of [the artwork] from the State of New York is of no consequence.").

Finally, Guzzini's claim that this Court "could do no more than issue an advisory opinion" concerning the competing title claims is puzzling, where V&A has stated a legal claim for conversion. Of course, V&A also could have sought a declaratory judgment—and there can be no serious dispute that this Court also would have subject-matter jurisdiction over such a claim—but V&A of course can elect to pursue one, not both of these available remedies. *See Lynch v. Plesch*, 8 Misc. 2d 612, 613, 167 N.Y.S.2d 885, 887 (Sup. Ct. N.Y. Co.), *aff'd,* 4 A.D.2d 945, 168 N.Y.S.2d 620 (1957) ("While plaintiffs may have an equitable action for relief against defendants,

---

[3] Indeed, such a rule would have the unwanted consequence of incentivizing thieves and other converters to remove property from this state to deprive this Court of jurisdiction.

they are not required to seek that remedy exclusively. A remedy at law [(damages for conversion)] is also available which is not mutually exclusive and the choice is that of plaintiffs.")

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

Dated: September 4, 2020
New York, New York

Respectfully Submitted,

**GROSSMAN LLP**

By: *(signature)*
Judd B. Grossman, Esq.
Lindsay E. Hogan, Esq.
Sarah E. Schuster, Esq.
745 Fifth Avenue, 5th Floor
New York, New York  10151
Telephone:  (646) 770-7445
Facsimile:  (646) 417-7997

*Attorneys for V&A Collection, LLC*