UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| V&A COLLECTION, LLC,<br><br>       Plaintiff,<br><br>     -v.-<br><br>GUZZINI PROPERTIES, LTD.,<br><br>       Defendant. | 20 Civ. 1797 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Competing ownership interests in a work by artist Wade Guyton were sold at different times by the same art dealer, Inigo Philbrick, to Plaintiff V&A Collection, LLC ("Plaintiff" or "V&A") and to Defendant Guzzini Properties, Ltd. ("Defendant" or "Guzzini"). The artwork is currently held by a third party, after being sold by Defendant in November 2019. Plaintiff brought the instant action for conversion, claiming that Defendant interfered with Plaintiff's ownership interest in the artwork. Now before the Court is Defendant's motion to dismiss the Complaint on several bases. (Dkt. #27). Finding that it lacks personal jurisdiction over Defendant, the Court grants Defendant's motion.

## BACKGROUND[1]

### A. Factual Background

Plaintiff V&A is a limited liability company organized under the laws of New York. (Compl. ¶ 8). Defendant Guzzini is a company registered in the

---

[1] The facts in this Opinion are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1-1)), as filed in the Supreme Court of the State of New York, County of New York, on February 26, 2020, and removed by Defendant to this Court on February 28, 2020 (Dkt. #1), which Complaint is the operative pleading in this case, as well from the exhibits attached to the Declaration of Wendy J. Lindstrom in Support of Defendant's

British Virgin Islands, with a principal place of business in London. (*Id.* at ¶ 9). Non-party Modern Collections is a secondary-market art dealership located in London. (*See id.* at ¶ 16; Lindstrom Decl., Ex. C).

On or about July 1, 2013, V&A purchased from Modern Collections a 50% ownership interest in an artwork by artist Wade Guyton (the "Guyton work"). (*See* Lindstrom Decl., Ex. C; Grossman Decl., Ex. 2; Compl. ¶ 15). V&A acquired the 50% stake plus $350,000 in exchange for another work V&A had purchased from Modern Collections in 2012. (Compl. ¶ 17; *see also* Lindstrom Decl., Ex. C; Grossman Decl., Ex. 2). V&A and Modern Collections agreed, as part of the deal, that when the Guyton work was next sold, V&A would receive $850,000, Modern Collections would receive $700,000, and any additional profits would be split evenly. (Compl. ¶ 18; *see also* Grossman Decl., Ex. 2). Non-party Inigo Philbrick acted on behalf of Modern Collections in the deal. (*See* Lindstrom Decl., Ex. C; Grossman Decl., Ex. 2).

In June 2017, Inigo Philbrick Limited ("IPL") — an entity controlled by Philbrick — entered into a purchase and sale agreement (the "June 2017 agreement") with Defendant Guzzini, through which agreement Defendant acquired three artworks, including the Guyton work, for a total of $6,000,000.

---

Motion to Dismiss ("Lindstrom Decl., Ex. []" (Dkt. #28)), and the exhibits attached to the Declaration of Judd B. Grossman in Opposition to Defendant's Motion to Dismiss ("Grossman Decl., Ex. []" (Dkt. #31)).

For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss as "Def. Br." (Dkt. #29); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss as "Pl. Opp." (Dkt. #30); and Defendant's Reply Memorandum of Law in Further Support of Its Motion to Dismiss as "Def. Reply" (Dkt. #32).

(Lindstrom Decl., Ex. D).  The agreement warrantied, *inter alia*, that "[t]he Seller has full legal and beneficial title to the Artworks and is entitled without further action to transfer the legal and beneficial title in the Artworks to the Buyer on the terms of this Agreement without the consent of any third party." (*Id.* at ¶ 4.1.1).  The agreement also provided a buy-back option to IPL during a period lasting through August 2018.  (*Id.* at ¶¶ 5-5.6).

In a supplemental agreement dated August 28, 2018, Defendant agreed to extend the expiration of the buy-back option for another year, through August 2019, in exchange for an additional option fee.  (Grossman Decl., Ex. 3).  All other terms of the June 2017 agreement remained in effect.  (*Id.*).  IPL did not exercise the buy-back option prior to its expiration.  (*See* Def. Reply 2).  Both the June 2017 agreement and the August 2018 extension document contain choice-of-law provisions specifying that the agreements will be governed by English law.  (Lindstrom Decl., Ex. D at ¶¶ 8.7, 8.8; Grossman Decl., Ex. 3 at ¶ 3(b)).

On October 30, 2019, Defendant filed an *in rem* action in the Supreme Court of New York, New York County (the "Stingel action"), seeking to quiet title to an artwork by Rudolf Stingel (the "Stingel work").  *See Guzzini Properties Ltd. v. "Untitled by Rudolf Stingel, 2012," in Rem*, Index No. 656467/2019 (N.Y. Sup. Ct. filed Oct. 30, 2019).  Defendant had acquired an ownership interest in the Stingel work from IPL in the same June 2017 agreement through which it acquired an ownership interest in the Guyton work.  (Compl. ¶ 12; *see also* Lindstrom Decl., Ex. D).  V&A attempted to intervene in the Stingel action and

to obtain an injunction barring Defendant from selling, transferring, or otherwise disposing of the Guyton work pending adjudication of the various parties' rights under the June 2017 agreement. (*See* Dkt. #10-5). The state court denied the request to intervene, as Plaintiff's claims did not concern the Stingel work, and directed V&A to file a separate complaint concerning the Guyton work. (*See id.* at 17:6-22).

On November 1, 2019, Defendant transferred ownership of the Guyton work to Lanark Services Ltd. ("Lanark"), which has a director in common with Defendant. (Compl. ¶¶ 25, 31; Dkt. #11). The Guyton work is physically located in Switzerland. (Lindstrom Decl., Ex. F, Response to Request No. 1).

**B.     Procedural Background**

Plaintiff filed suit against Defendant in the Supreme Court of New York, County of New York, on February 26, 2020. (*See* Dkt. #1). On February 8, 2020, Defendant removed the action to this Court based on diversity jurisdiction. (*See id.*). On March 5, 2020, Plaintiff filed a proposed Order to Show Cause seeking authorization to execute service by Federal Express mailing to Defendant's New York counsel and principal place of business in London, as well as expedited discovery concerning the location of the artwork. (Dkt. #8-10). The Court heard argument on the proposed Order on March 6, 2020, and denied Plaintiff's requests as moot. (*See* Minute Entry for March 6, 2020).

On April 28, 2020, Defendant filed a pre-motion letter requesting a conference regarding its anticipated motion to dismiss the Complaint. (Dkt.

#18). Plaintiff responded on May 1, 2020. (Dkt. #19). The Court held a pretrial conference on May 14, 2020, during which conference the Court authorized limited jurisdictional discovery and set the briefing schedule for Defendant's motion to dismiss. (*See* Minute Entry for May 14, 2020). Plaintiff provided its request for production of documents related to jurisdiction to Defendant on May 21, 2020 (Lindstrom Decl., Ex. E), to which request Defendant responded on July 6, 2020 (*id.*, Ex. F). Defendant filed its motion to dismiss and supporting materials on August 5, 2020 (Dkt. #27-29); Plaintiff filed its opposition on September 4, 2020 (Dkt. #30-31); and Defendant filed its reply on September 18, 2020 (Dkt. #32). The motion is now fully briefed and ripe for resolution.

## DISCUSSION

Defendant raises four grounds for dismissal: (i) this Court lacks specific personal jurisdiction over Defendant; (ii) this Court is an inconvenient forum for resolution of this action; (iii) Plaintiff has failed to state a cause of action for conversion; and (iv) equity jurisdiction is lacking. (*See generally* Def. Br.). As explained herein, the Court agrees with Defendant that the Court lacks personal jurisdiction over Defendant. The Court also concludes that Defendant's arguments for dismissal based on the doctrine of *forum non conveniens* or for dismissal under Federal Rule of Civil Procedure 12(b)(6) are moot in light of the Court's jurisdictional decision, and that the Court's equity jurisdiction is not implicated by Plaintiff's conversion claim.

### A. The Court Lacks Specific Personal Jurisdiction over Defendant

Plaintiff, which bears the burden of establishing this Court's jurisdiction, asserts that this Court has personal jurisdiction over Defendant as a result of Defendant's implied consent. (*See* Compl. ¶¶ 10, 13; Pl. Opp. 6-8). Plaintiff does not allege a statutory basis for personal jurisdiction under New York's long-arm statute. Nevertheless, the Court considers both potential bases for jurisdiction.

#### 1. Applicable Law

##### a. General Principles

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332. Generally, a district court sitting in diversity has personal jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG* v. *Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). To determine whether personal jurisdiction over Defendant is proper, the Court uses a two-step analysis. *First*, the Court must determine whether New York's long-arm statute, found at New York Civil Practice Law and Rules ("CPLR") § 302, confers jurisdiction over Defendant to New York State courts of general jurisdiction. *Second*, the Court must consider whether the exercise of personal jurisdiction over Defendant comports with the requirements of the Due Process Clause of the United States Constitution. *See House of Diamonds* v. *Borgioni, LLC*, 737 F. Supp. 2d 162, 166 (S.D.N.Y. 2010)

(citing *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996)); *see also, e.g.*, *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *Licci* v. *Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013).

### b. New York's Long-Arm Statute

New York's long-arm statute provides:

> (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a).

### c. Due Process Clause Requirements

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden* v. *Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 291 (1980)). "[T]he nonresident generally must have certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)). "For a State to exercise specific jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284.[2] "[T]he plaintiff cannot be the only link between the defendant and the forum"; rather, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 285-86 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)); *accord Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010); *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).

---

2   The Court focuses on specific jurisdiction because Plaintiff does not argue, and there is no factual basis for finding, that Defendant's "affiliations with [New York] are so 'continuous and systematic' as to render [it] essentially at home in the forum State" and therefore subject to the general jurisdiction of New York courts. *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 317 (1945)).

### d. Consent-Based Jurisdiction

The statutory and minimum-contacts analyses are not the final word on personal jurisdiction, however; a defendant's consent provides another path for a court to obtain personal jurisdiction. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). "[R]egardless of the power of the State to serve process, an individual may submit to the jurisdiction of the court by [express or implied consent]." *Id.*; *accord D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

### 2. Analysis

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life*, 84 F.3d at 566. "In the instant case — where the parties have conducted … discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held — 'the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990)); *see also Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (discussing "considerable procedural leeway" afforded district courts in deciding personal jurisdiction issues).

9

The Court first considers Plaintiff's argument that this Court has jurisdiction over Defendant as a result of Defendant's implied consent. The Court also assesses whether, in lieu of consent, New York's long-arm statute provides jurisdiction.

### a. Defendant Has Not Consented to This Court's Jurisdiction

Plaintiff asserts a single basis for this Court's exercise of personal jurisdiction: Defendant allegedly consented to be subject to the jurisdiction of New York courts by filing the Stingel action. (*See* Compl. ¶¶ 10-13; Pl. Opp. 6-8). In Plaintiff's view, "[w]here Guzzini chose New York as the forum to litigate its rights to artworks under the [June 2017 agreement], there can be no question that Guzzini has consented to this Court's jurisdiction for the purposes of these claims arising out of Guzzini's alleged rights under the very same transaction and agreement." (Pl. Opp. 6). Defendant responds that its decision to file an *in rem* action in a New York State court to recover the Stingel work — which, unlike the Guyton work, is physically located in New York — does not establish Defendant's consent to New York courts exercising *in personam* jurisdiction over Defendant in other matters. (*See* Def. Reply 6-8). The Court agrees that Defendant's filing of the Stingel action does not suffice to provide this Court with personal jurisdiction over Defendant in this action, even though Defendant's rights under the June 2017 agreement are at issue in both cases.

Defendant has not expressly consented to this Court's jurisdiction; thus, the Court must assess whether Defendant's consent should be deemed implied

from conduct.  The Court concludes that the four cases Plaintiff cites in support of the exercise of jurisdiction are distinguishable in meaningful ways. (*See* Pl. Opp. 6-7 (citing *Neuralstem, Inc.* v. *StemCells, Inc.*, 573 F. Supp. 2d 888 (D. Md. 2008); *Rusakiewicz* v. *Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009); *SpaceCo Bus. Sols., Inc.* v. *Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1156 (D. Colo. 2013), *aff'd*, 553 F. App'x 1008 (Fed. Cir. 2014); and *Abbacor, Inc.* v. *Miller*, No. 01 Civ. 803 (JSM), 2001 WL 1006051, at *3 (S.D.N.Y. Aug. 31, 2001))).

Plaintiff relies most heavily on *Neuralstem*, in which the district court said that "[m]any courts have concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction."  573 F. Supp. 2d at 897. Plaintiff asks the Court to draw from this language the principle that Defendant's invocation of a New York court's jurisdiction to adjudicate Defendant's rights to the Stingel work, specifically, allows New York courts to exercise jurisdiction over any dispute to which Defendant's broader rights under the June 2017 agreement are relevant.  (Pl. Opp. 7-8).  But *Neuralstem* and the cases it cites do not support such an expansive position.  The *Neuralstem* court determined that it could exercise personal jurisdiction over an out-of-state defendant based on implied consent because the defendant had "purposefully availed itself of the privileges and benefits of this forum by voluntarily filing [an earlier action in the forum], which involves the *same*

11

*parties* and is related to the *same transaction* or occurrence as the instant matter." *Id.* at 898 (emphasis added).

In reaching this conclusion, the *Neuralstem* court relied on the First Circuit's decision in *General Contracting & Trading Co.* v. *Interpole, Inc.*, which set forth the uncontroversial proposition that fairness requires that a plaintiff who brings suit in a particular forum thereby submits himself to that court's jurisdiction for purposes of counterclaims and crossclaims arising out of the same transaction. 940 F.2d 20, 23 (1st Cir. 1991) (concluding that rejecting personal jurisdiction in a second suit between the same two parties would "produce an unjust asymmetry, allowing a party ... to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing."); *see also Dow Chemical Co.* v. *Calderon*, 422 F.3d 827, 834-35 (9th Cir. 2005) (assuming without deciding that the Ninth Circuit would agree with *Interpole*'s conclusion that "there is nothing unfair, or violative of due process, about requiring a party that has affirmatively sought the aid of our courts with regard to a particular transaction to submit to jurisdiction in the same forum as a defendant with regard to the same transaction with the same party").

Unlike in *Neuralstem* and *Interpole*, this matter does not involve the same parties on both sides as the Stingel action — V&A has no stake in the Stingel work and its attempt to intervene in the Stingel action was rejected by the state court on that very basis. It is also dubious whether this action involves the

12

same transaction as the Stingel action, given that V&A's claims against Defendant concern Defendant's rejection in October 2019 of V&A's claim of 50% ownership to the Guyton work, rather than Defendant's conduct in entering into the June 2017 agreement. Thus, the Court is not persuaded that *Neuralstem* supports Plaintiff's argument for jurisdiction in this case.

*Rusakiewicz*, *SpaceCo*, and *Abbacor* likewise do not address the scenario presented here. *See Rusakiewicz*, 556 F.3d at 1101 (stating that "[i]t is well established that the act of filing a lawsuit in a particular state is sufficient to establish jurisdiction over the plaintiff in the courts of that state in a subsequent action for abuse of process or similar torts" committed in the first lawsuit (citing *Neuralstem*, 573 F. Supp. 2d at 897-98)); *SpaceCo*, 942 F. Supp. 2d at 1157 (concluding that defendants were subject to personal jurisdiction in the state where they allegedly abused the legal process and engaged in malicious prosecution); *Abbacor*, 2001 WL 1006051, at *3 (finding consent to personal jurisdiction in New York where the defendant had previously initiated arbitration proceedings in New York and participated in those proceedings for eighteen months, and the agreement in dispute provided that New York law governed its validity, interpretation, and any disputes arising between the parties under the agreement).

District courts in the Second Circuit have concluded that "a party's appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court." *Gulf Ins. Co. v. Caldor Corp.*, No. 03 Civ. 2894 (LLS), 2006 WL 1586571, at *3 (S.D.N.Y.

13

June 9, 2006); *see also China Nat'l Chartering Corp.* v. *Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 592 (S.D.N.Y. 2012) ("For present purposes, however, it suffices to say that there is no persuasive authority for the distinct proposition … that the filing of a lawsuit in the same forum in which a party is defending another suit in and of itself waives any objection to personal jurisdiction in the first suit."); *Capitol Res. Funding, Inc.* v. *Tri-County Bank of Royston*, No. 96 Civ. 746 (RSP) (DNH), 1997 WL 538898 (N.D.N.Y. Aug. 27, 1997) (finding that defendant's appearance as a creditor in a bankruptcy action in the district did not waive personal jurisdiction objection in a subsequent contract dispute with another creditor in the same bankruptcy action). So too here.

The fact that Defendant brought suit in New York to quiet title to the Stingel work is not a sufficient basis for this Court to exercise personal jurisdiction over Defendant in a separate dispute regarding the Guyton work. The two actions involve different parties and different nuclei of operative facts, and Plaintiff has not given the Court any reason to believe that the resolution of Defendant's rights to the Stingel work will have any consequences for the instant dispute between Plaintiff and Defendant over the Guyton work. The particular concerns about symmetry and justice that drove the decisions in *Interpol* and its progeny are not present in this case. Consequently, the Court concludes that Defendant's filing of the Stingel action cannot be deemed implicit consent to the personal jurisdiction of this Court in this distinct action.

### b. New York's Long-Arm Statute Does Not Provide Jurisdiction

Although Plaintiff's Complaint does not raise New York's long-arm statute as a basis for this Court's exercise of personal jurisdiction over Defendant, the Court understands Plaintiff to reference New York's long-arm statute in a footnote in its opposition brief. Plaintiff states that Defendant should have expected the transfer of the Guyton work to Lanark in November 2019 — after Plaintiff had allegedly notified Defendant in October 2019 of Plaintiff's competing ownership claim to the work — "to have consequences in New York." (Pl. Opp. 7 n.1 (citing *House of Diamonds*, 737 F. Supp. 2d at 167)). The Court interprets this comment as a reference to a subsection of New York's long-arm statute that provides that a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state, … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" N.Y. CPLR § 302(a)(3)(ii); *accord Krisko* v. *Marvel Entm't, LLC*, 473 F. Supp. 3d 288, 300 (S.D.N.Y. 2020).

Defendant argues that "V&A has not alleged or submitted proof that the supposed conversion occurred in New York; that Guzzini was even aware of V&A's place of business when it allegedly converted the Guyton; or that any act by Guzzini was directed to V&A in New York." (Def. Reply 6). The Court agrees that Plaintiff's Complaint lacks these crucial allegations, as well as an allegation regarding the revenue Defendant derives from interstate or

15

international commerce.  Thus, Plaintiff fails to plead sufficient facts to make a *prima facie* case that this Court may exercise personal jurisdiction over Defendant under New York's long-arm statute.  *See Krisko*, 473 F. Supp. 3d at 300 ("'Each element of [section 302(a)(3)(ii)] is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision'" (quoting *Yash Raj Films (USA) Inc.* v. *Dishant.com LLC*, No. 08 Civ. 2715 (ENV) (RML), 2009 WL 4891764, at *8 (E.D.N.Y. Dec. 15, 2009))).  As a result, this action must be dismissed for lack of personal jurisdiction over Defendant.

### B.     The Court's Jurisdiction over the Guyton Work Is Not at Issue

Defendant's second jurisdictional argument is that the Court lacks "equity jurisdiction."  (*See* Def. Br. 12-13).  The Court interprets this argument to refer to the Court's jurisdiction *in rem* or *quasi in rem*, and specifically the Court's jurisdiction over the Guyton work.  However, Plaintiff's claim against Defendant is for conversion and Plaintiff seeks primarily compensatory damages; the Court's jurisdiction over the Guyton work itself, which is physically located in Switzerland, is not implicated.  (*See* Compl. ¶¶ 28-33).  As such, the Court need not address whether it could, in theory, adjudicate an *in rem* or *quasi in rem* action involving the Guyton work.

## CONCLUSION

For the reasons stated in this Opinion, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction. The Court does not address Defendants' motions to dismiss for *forum non conveniens* and under Rule 12(b)(6), as those alternative bases for dismissal have been rendered moot. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   March 16, 2021
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge